# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

KAREN CARROLL, HONOR CARROLL, )
AND TRACE CARROLL, AS THE )
SURVIVING HEIRS AND AS ) Case No. 2:21-cv-4136
ADMINISTRATRIX OF THE ESTATE )
OF SHAWN E. CARROLL, DECEASED, )
)
        Plaintiffs, ) JURY TRIAL DEMANDED
v. )
)
BRUNSWICK CORPORATION, )
SEA RAY BOATS, and BRUNSWICK )
BOAT GROUP, )
)
        Defendants. )
)

## PLAINTIFFS' ORIGINAL COMPLAINT

1. Plaintiffs Karen Carroll, Honor Carroll, and Trace Carroll, as the surviving heirs and as administratrix of the estate of Shawn E. Carroll, Deceased (collectively "Plaintiffs"), by and through their counsel, hereby bring this action against Defendants Sea Ray Boats, Brunswick Boat Group, Brunswick Corporation (collectively, "Defendants") as follows:

## INTRODUCTION

2. Plaintiffs bring this cause of action against Defendants for wrongful death and other injuries and loss sustained because of Shawn E. Carroll (the "Decedent") being trapped and killed in a fiery boat explosion on Lake of the Ozarks on May 2, 2020. Mr. Carroll's lifeless body was found in the scorched engine compartment of a Sea Ray model 340DA boat manufactured and distributed by Defendants. More specifically, Plaintiffs' claims involve Defendants' negligent,

1

willful, and wrongful conduct in connection with the explosion of the Sea Ray vessel and Mr. Carroll's death.

## I.  THE PARTIES

**Plaintiffs**

3.      Plaintiffs are Class I beneficiaries of the Decedent and bring this action pursuant to Missouri Revised Statutes 537.080, et seq.  Specifically, Plaintiff Karen Carroll is the surviving mother and administratrix of the estate of Mr. Carroll.  Ms. Carroll is a resident of Saint Louis, Missouri.  Plaintiffs Honor Carroll and Trace Carroll are the surviving children of Mr. Carroll and are residents of Saint Louis, Missouri.  At the time of his death, Mr. Carroll, was a resident of Saint Louis, Missouri.

**Defendants**

4.      Defendant Brunswick Corporation is a Delaware corporation with its headquarters and principal place of business in Mettawa, Illinois, and can be served through its registered agent, CT Corporation System, 120 South Central Ave., Clayton, MO 63105.

5.      Defendant Sea Ray Boats is a Delaware corporation with its headquarters and principal place of business in Knoxville, Tennessee, and can be served through its registered agent, CT Corporation System, 300 Montvue Road, Knoxville, TN 37919-5546.

6.      Defendant Brunswick Boat Group is a Delaware corporation with its headquarters and principal place of business in Knoxville, Tennessee, and can be served through its registered agent, CT Corporation System, 300 Montvue Road, Knoxville, TN 37919-5546.

2

7. Upon information and belief, Defendants, or each of them, design, manufacture, and sell pleasure boats under the "Sea Ray" trade name. Further, upon information and belief, Defendants design, manufacture, and sell marine engines under the Mercury Marine trade name.

## II. JURISDICTION AND VENUE

8. Jurisdiction is proper in this Court under 28 U.S.C. § 1332(a)(1). The amount in controversy exceeds $75,000.00 and all Plaintiffs and all Defendants are residents of different states.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2).

## III. NATURE OF THE ACTION AND UNDERLYING FACTS

10. On May 2, 2020, Mr. Carroll and his friends, Benjamin Dodd, his fiancé Lauren Wilken, and boat driver Brent Soloman boarded the "PAJIVO," a pleasure boat owned by Dr. Patrick Oruwari of St. Louis, for a what they hoped would be a fun-filled Saturday of leisure boating at Lake of the Ozarks. Instead, the passengers' fun Saturday instantly and tragically turned to terror and despair.

11. The PAJIVO was a 33-foot Sea Ray model 340DA inboard engine, fiberglass pleasure watercraft, VIN SERT4751K899, MO registration number MO8034US (hereinafter referred to as the "Sea Ray" or "PAJIVO"). Upon information and belief, the Sea Ray was equipped with dual Mercury Marine Mercruiser engines.

12. On the day of the incident, the Sea Ray had just been refueled. As one of the dockhands was untying the Sea Ray after it was refueled, it suddenly exploded in a massive fireball. Smoke from the explosion could be seen for miles. The explosion ejected Ms. Wilken and Mr. Dodd from the boat. Mr. Soloman jumped into the water to flee the burning vessel. Sadly,

Mr. Carroll, was burned to death in the explosion. He was first thought to be missing in the water after the fire was doused, but later his charred remains were located near the engine compartment of the boat. One of the dockhands jumped into the water to rescue Mr. Dodd, who was badly injured. A passenger on a nearby boat jumped into the water to save Ms. Wilken. Returning to the dock with Ms. Wilken, he and others then helped pull Mr. Soloman from the water.

13. The shock of the explosion blew out the door and windows to the marina. The dock attendants fortunately shut off the gas pumps' emergency cutoff. The refueling marina's owner ran to the boat and cut the ropes, shoving it away from the dock and into the cove. The PAJIVO at this point was a floating fireball, drifting deeper into the cove and towards another marina. Boaters on personal watercraft managed to divert the PAJIVO to the shoreline before it reached the other marina. Once the engulfed Sea Ray had been diverted through other boaters' actions to the shoreline, Osage Beach firefighters extinguished the blaze.

14. Unfortunately, the explosion is not the first time that a Sea Ray pleasure boat has exploded without warning. Boats with onboard gasoline engines, like the Sea Ray, may store vapors in the bilge—the part of a boat that would sit on the ground if it were unsupported by water—and an electrical spark may cause a fire or explosion. In 2009, a similar 33-foot Sea Ray boat exploded injuring 15 people in Tampa Bay, Florida. In 2018, a Ft. Lauderdale, Florida man was burned over half of his body while working on a 32-foot Sea Ray when the boat suddenly exploded into flames. Other similar incidents have occurred throughout the United States and around the world.

15. Upon information and belief, the engines and fuel system on the subject Sea Ray were designed, manufactured, distributed, and sold by Defendants.

4

## IV. CLAIMS

### COUNT I
### STRICT LIABILITY (DESIGN DEFECT)

16. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

17. Plaintiffs bring this strict liability claim against Defendants for defective design.

18. At all times relevant to this litigation, Defendants engaged in the business of designing, developing, manufacturing, selling, distributing the Sea Ray, which was defective and unreasonably dangerous to consumers, including Plaintiffs, thereby placing the Sea Ray into the stream of commerce. These actions were under the ultimate control and supervision of Defendants. At all times relevant to this litigation, Defendants designed, researched, developed, manufactured, produced, tested, assembled, labeled, advertised, promoted, marketed, sold, and distributed the Sea Ray that killed Mr. Carroll, as described above.

19. At all times relevant to this litigation, the Sea Ray was designed and manufactured in an unsafe, defective, and inherently dangerous manner that was dangerous for use by the public, and, in particular, Mr. Carroll.

20. At all times relevant to this litigation, the Sea Ray reached the intended consumers, users or other persons coming into contact with the product, including Mr. Carroll, without substantial change in the Sea Ray's condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendants.

21. The Sea Ray, as researched, tested, developed, designed, licensed, manufactured, labeled, distributed, sold, and marketed by Defendants was defective in design and formulation in

5

that when it left the hands of Defendants, it was unreasonably dangerous and dangerous to an extent beyond that which an ordinary consumer would contemplate.

22. The Sea Ray, as researched, tested, developed, designed, licensed, manufactured, labeled, distributed, sold, and marketed by Defendants was defective in design and formulation in that when it left the hands of Defendants, the foreseeable risks exceeded the benefits associated with its design.

23. At all times relevant to this action, Defendants knew or had reason to know that the Sea Ray was defective and were inherently dangerous and unsafe when used in the manner instructed and provided Defendants.

24. Therefore, at all times relevant to this litigation, the Sea Ray, as researched, tested, developed, designed, licensed, manufactured, labeled, distributed, sold, and marketed by Defendants was defective in design and formulation, in one or more of the following ways:

a) When placed in the stream of commerce, the Sea Ray was defective in design and formulation, and, consequently, dangerous to an extent beyond that which an ordinary consumer would contemplate.

b) When placed in the stream of commerce, the Sea Ray was unreasonably dangerous in that it was hazardous and posed a grave risk of injury or death when used in a reasonably anticipated manner.

c) When placed in the stream of commerce, the Sea Ray contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated or intended manner.

6

d) Defendants did not sufficiently test, investigate, or monitor the dangers posed by the Sea Ray.

e) The dangers posed by the Sea Ray outweigh any potential utility stemming from its use.

f) Defendants did not conduct adequate post-marketing surveillance of its Sea Ray products.

h) Defendants could have employed safer alternative designs.

25. Mr. Carroll was exposed to the dangers of the Sea Ray during his personal and recreational use of the watercraft, as described above, without knowledge of the Sea Ray's dangerous characteristics.

26. At all times relevant to this litigation, Mr. Carroll used the Sea Ray in an intended or reasonably foreseeable manner without knowledge of its dangerous characteristics.

27. Mr. Carroll could not have reasonably discovered the defects and risks associated with the Sea Ray before or at the time of the incident causing his death.

28. The harm caused by the Sea Ray's design far outweighed their benefit, rendering it dangerous to an extent beyond that which an ordinary consumer would contemplate. The Sea Ray was more dangerous than alternative products and designs and Defendants could have designed the Sea Ray to make it less dangerous. Indeed, at the time that Defendants designed the Sea Ray, the state of the industry's scientific knowledge was such that a less risky design or formulation was attainable.

7

29. At the time the Sea Ray left Defendants' control, there was a practical, technically feasible and safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended use of the Sea Ray.

30. Defendant's defective design of the Sea Ray was willful, wanton, fraudulent, malicious, and conducted with reckless disregard for the health and safety of users of the Sea Ray, including Mr. Carroll.

31. Therefore, as a result of the unreasonably dangerous condition of the Sea Ray, Defendants are strictly liable to Plaintiffs.

32. The defects in the Sea Ray caused or contributed to cause Plaintiffs' grave injuries and/or death, and, but for Defendants' misconduct and omissions, Plaintiffs would not have sustained their injuries and/or death.

33. Defendants' conduct, as described above, was reckless. Defendants risked the lives of consumers and users of the Sea Ray, including the Plaintiffs, with knowledge of the safety problems associated with the Sea Ray, and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, warn, or inform the unsuspecting public. Defendants' reckless conduct warrants an award of aggravated damages.

34. As a direct and proximate result of Defendants placing the defective Sea Ray into the stream of commerce, Plaintiffs have suffered and continue to suffer grave injuries and/or death, and have endured physical pain and discomfort, as well as economic hardship, including considerable financial expenses, including but not limited to lost wages, future earnings, and funeral and burial expenses, where applicable.

8

35. WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages in an amount in excess of $75,000.00, together with interest, costs herein incurred, and all such other and further relief as this Court deems just and proper. Plaintiffs also demand a jury trial on the issues contained herein.

## COUNT II
## STRICT LIABILITY (FAILURE TO WARN)

36. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

37. Plaintiffs bring this strict liability claim against Defendants for failure to warn.

38. At all times relevant to this litigation, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting the Sea Ray, which was defective and unreasonably dangerous to consumers, including Plaintiffs, because Defendants failed to provide adequate warnings or instructions concerning the dangerous characteristics the Sea Ray, in particular the risk of explosive fire and resulting injuries and death. These actions were under the ultimate control and supervision of Defendants.

39. Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce the Sea Ray, and in the course of same, directly advertised or marketed the Sea Ray to consumers and end users, including Plaintiffs, and therefore had a duty to warn of the risks associated with use of the Sea Ray.

40. At all times relevant to this litigation, Defendants had a duty to properly test, develop, design, manufacture, inspect, label, market, promote, sell, distribute, maintain supply, provide proper warnings, and take such steps as necessary to ensure that the Sea Ray did not cause

9

users and consumers to suffer from unreasonable and dangerous risks. Defendants had a continuing duty to warn Plaintiffs of the dangers associated with the Sea Ray. Defendants, as manufacturer, seller, promoter, marketer, or distributor of the Sea Ray, are held to the knowledge of an expert in the field.

41. At the time of the Sea Ray left Defendants' control, they could have provided the warnings or instructions regarding the full and complete risks of using the Sea Ray because it knew or should have known of the unreasonable risks of harm associated with the use of and/or exposure to the Sea Ray.

42. At all times relevant to this litigation, Defendants failed to investigate, study, test, or promote the safety or to minimize the dangers to users and consumers of its product and to those who would foreseeably use or be harmed by the Sea Ray, including Plaintiffs.

43. Despite the fact that Defendants knew or should have known that the Sea Ray posed a grave risk of harm, it failed to exercise reasonable care to warn of the dangerous risks associated with its use. The dangerous propensities of the Sea Ray, as described above, were known or knowable to Defendants through appropriate research and testing by known methods, at the time it distributed, marketed, promoted, supplied, or sold the Sea Ray, and not known to end users and consumers, such as Plaintiffs.

44. The Sea Ray created significant risks of serious bodily harm to consumers, as alleged herein, and Defendants failed to adequately warn consumers and reasonably foreseeable users of such risks. Defendants have wrongfully concealed information concerning the dangerous propensities of the Sea Ray.

10

45. At all times relevant to this litigation, Defendants' products reached the intended consumers, users or other persons coming into contact with these products in Missouri and throughout the United States, including Plaintiffs and/or Decedent, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, promoted, and marketed by Defendants.

46. The Sea Ray was defective because of insufficient or nonexistent warnings provided with the Sea Ray, which failed to communicate adequate information on the dangers and safe use and failed to communicate warnings and instructions that were appropriate and adequate to render the Sea Ray safe for its ordinary, intended, and reasonably foreseeable use.

47. Any information that Defendants did provide or communicate failed to contain relevant warnings, hazards, and precautions that would have enabled consumers such as Plaintiffs to utilize the Sea Ray safely and with adequate protection. Instead, Defendants disseminated information that was inaccurate, false, and misleading and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries and/or death with use of the Sea Ray.

48. As a result of their inadequate warnings, the Sea Ray was defective and unreasonably dangerous when it left Defendants' possession and/or control and was used by Mr. Carroll.

49. Defendants are liable to Plaintiffs for injuries and/or death caused by their negligent or willful failure, as described above, to provide adequate warnings regarding the appropriate use of the Sea Ray and the risks associated with the use the Sea Ray.

11

50.     The defects in the Sea Ray caused or contributed to cause Plaintiffs' injuries and/or death, and, but for this misconduct and omissions, Plaintiffs would not have sustained their injuries and/or death.

51.     Had Defendants provided adequate warnings and instructions and properly disclosed and disseminated the risks associated with the Sea Ray, Plaintiffs could have avoided the risk of injuries and/or death as alleged herein.

52.     Mr. Carroll was exposed to the dangers of the PAJIVO during his personal and recreational use of the watercraft, as described above, without knowledge of the dangers.

53.     At all times relevant to this litigation, Mr. Carroll used the PAJIVO in an intended or reasonably foreseeable manner without knowledge of its dangerous characteristics.

54.     Mr. Carroll could not have reasonably discovered the risks associated with his use of the PAJIVO before or at the time of the incident causing his death.

55.     As a direct and proximate result of Defendants placing the defective Sea Ray vessel into the stream of commerce, Plaintiffs have suffered severe injuries and/or death and have endured physical pain and discomfort, as well as economic hardship, including considerable financial expenses, including but not limited to lost wages, future earnings, and funeral and burial expenses.

56.     WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages in an amount in excess of $75,000.00 together with interest, costs herein incurred, and all such other and further relief as this Court deems just and proper.  Plaintiffs also demand a jury trial on the issues contained herein.

12

**COUNT III**
**NEGLIGENCE**

57.     Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

58.     Defendants, directly or indirectly, caused the Sea Ray to be manufactured, sold, distributed, labeled, marketed, promoted, and/or used by Mr. Carroll.

59.     At all times relevant to this litigation, Defendants had a duty to exercise reasonable care in the design, research, manufacture, marketing, advertisement, supply, promotion, sale, distribution, and use of the Sea Ray, including the duty to take all reasonable steps necessary to ensure that the Sea Ray was not unreasonably dangerous to consumers and users of the product.

60.     At all times relevant to this litigation, Defendants had a duty to exercise reasonable care in the marketing, advertisement, and sale of the Sea Ray.  Defendants' duty of care owed to consumers and the general public included providing accurate, true, and correct information concerning the risks of using the Sea Ray and appropriate, complete, and accurate warnings concerning the Sea Ray, and, in particular, its propensity to explode or catch fire.

61.     At all times relevant to this litigation, Defendants knew or, in the exercise of reasonable care, should have known of the hazards and dangers of the Sea Ray and specifically, its propensity to explode or catch fire.

62.     Accordingly, at all times relevant to this litigation, Defendants knew or, in the exercise of reasonable care, should have known that use of the Sea Ray could cause or be associated with Plaintiffs' injuries and/or death and thus created a dangerous and unreasonable risk of injury to the users of these products, including Plaintiffs.

13

63. Defendants also knew or, in the exercise of reasonable care, should have known that users and consumers of the Sea Ray were unaware of the risks and the magnitude of the risks associated with such use.

64. As such, Defendants breached the duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, supply, promotion, advertisement, sale, distribution, and use of the Sea Ray, in that Defendants knew or had reason to know of its defects inherent in the product, knew or had reason to know that a user's or consumer's use of the Sea Ray created a significant risk of harm, and failed to prevent or adequately warn of these risks and injuries and/or death.

65. Despite an ability and means to investigate, study, and test the Sea Ray and to provide adequate warnings, Defendants failed to do so. Indeed, Defendants wrongfully concealed information and have further made false and/or misleading statements concerning the safety and/or use of the Sea Ray.

66. Defendants were negligent in the following respects:

a) Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and distributing the Sea Ray without thorough testing;

b) Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, distributing, and offering for use the Sea Ray while negligently and/or intentionally concealing and failing to disclose the risk of serious harm associated with use of the Sea Ray;

14

c)   Failing to use reasonable and prudent care in the design, research, manufacture, and development of the Sea Ray so as to avoid the risk of serious harm associated with its use;

d)   Defendants failed to design and manufacture the Sea Ray so as to ensure its was at least as safe as other products on the market;

e)   Failing to provide adequate instructions, guidelines, and safety precautions to those persons who Defendants could reasonably foresee would use the Sea Ray;

f)   Failing to disclose to Plaintiffs, users/consumers, and the general public that use of the Sea Ray presented risks of serious risks and/or death;

g)   Failing to warn Plaintiffs, users/consumers, and the general public that the product's risk of harm was unreasonable;

h)   Suppressing or downplaying evidence about the risks, incidence, and prevalence of injuries associated with the Sea Ray; and

i)   Representing that the Sea Ray was safe for its intended use when, in fact, Defendants knew or should have known that the Sea Ray was not safe for its intended use.

67.   Defendants knew and/or should have known that it was foreseeable that consumers such as Plaintiffs would suffer injuries and/or death as a result of Defendants' failure to exercise ordinary care in the manufacturing, marketing, promotion, labeling, distribution, and sale of the Sea Ray.

68.   Plaintiffs did not know the nature and extent of the injuries and/or death that could result from the intended use of the Sea Ray.

15

69. Defendants' negligence was the proximate cause of the injuries and/or death, harm, and economic losses that Plaintiffs suffered, as described herein.

70. Defendants' conduct, as described above, was reckless. Defendants regularly risked the lives of consumers and users of the Sea Ray, including Plaintiffs, with full knowledge of the dangers of the Sea Ray. Defendants made conscious decisions not to redesign, re-label, warn, or inform the unsuspecting public, including Plaintiffs. Defendants' reckless conduct therefore warrants an award of aggravated or punitive damages.

71. As a proximate result of Defendants' wrongful acts and omissions in placing the defective Sea Ray into the stream of commerce and/or offering the Sea Ray for use without adequate warnings of the associated hazards and risks, Plaintiffs have suffered severe and permanent physical and emotional injuries and/or death. Plaintiffs have endured pain and suffering and have suffered economic losses, including but not limited to lost wages, future earnings, and funeral and burial expenses, in an amount to be determined.

72. WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages in an amount in excess of $75,000.00 together with interest, costs herein incurred, and all such other and further relief as this Court deems just and proper. Plaintiffs also demand a jury trial on the issues contained herein.

**COUNT IV**
**WRONGFUL DEATH & SURVIVAL**
**(Against All Defendants)**

73. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

16

74. Plaintiffs bring this claim on behalf of and for the benefit of the Decedent Mr. Carroll, who used the Sea Ray that ultimately led to his death on May 2, 2020.

75. Prior to the Mr. Carroll's death, he suffered bodily injury resulting in pain and suffering, severe trauma, mental anguish, and any other losses, costs and interest to which Plaintiffs are legally entitled to recover for in this matter. Moreover, Mr. Carroll suffered a shortened life, loss of earnings, loss of ability to earn, and funeral expenses and death.

76. As a direct and proximate cause of the Defendants' conduct, the Plaintiffs (the Decedent's beneficiaries) have incurred funeral and estate administration expenses as a result of the Mr. Carroll's death. Furthermore, by reason of the death of Mr. Carroll, his family has been deprived of support and have lost the society of the Decedent. Finally, substantial sums of money were expended by the Decedent's estate for funeral and burial.

77. In addition, pursuant to R.S.Mo. § 537.090, the trier of fact should award such damages as the Decedent may have suffered between the time of his injury and the time of his death, as set forth above, including but not limited to pain and suffering, disability, mental anguish, loss of capacity of the enjoyment of life, being hindered and prevented from pursuing his normal course of employment, suffering a shortened life expectancy, losing earnings, losing the ability to earn, and any other losses, costs and interest the recovery for which the Decedent might have maintained an action had death not ensued as a direct and proximate result of Defendants' conduct. Such survival damages are in addition to the wrongful death damages allowed under Missouri law.

78. WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages in an amount in excess of $75,000.00

together with interest, costs herein incurred, and all such other and further relief as this Court deems just and proper.  Plaintiffs also demand a jury trial on the issues contained herein.

## V.    <u>JURY DEMAND</u>

79.    PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL COUNTS.

Dated: July 16, 2021.                                    **THE WILBERS LAW FIRM**

By: /s/ *John L. Wilbers*
John L. Wilbers, #51848
130 S. Bemiston Ave., Suite 406
St. Louis, MO  63105
Telephone:  (314) 721-3040
Facsimile:  (314) 721-3052
filings@thewilberslawfirm.com
jwilbers@thewilberslawfirm.com
*Attorneys for Plaintiffs*


**BAILEY COWAN HECKAMAN PLLC**
Robert W. Cowan, # 68929
Aaron Heckaman (*pro hac vice appl. to be filed*)
Laurence G. Tien (*pro hac vice appl. to be filed*)
1360 Post Oak Blvd., Suite 2300
Houston, TX 77056
Telephone: (713) 425-7100
Facsimile: (713) 425-7101
rcowan@bchlaw.com
aheckaman@bchlaw.com
ltien@bchlaw.com
*Attorneys for Plaintiffs*
*Motion for Pro Hac Vice to be filed*

18