IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| KAREN CARROLL, HONOR CARROLL and TRACE CARROLL, AS THE SURVIVING HEIRS AND AS ADMINISTRATRIX OF THE ESTATE OF SHAWN E. CARROLL, DECEASED, and LAUREN WILKEN,<br><br>Plaintiffs,<br><br>and<br><br>BENJAMIN DODD,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>BRUNSWICK CORPORATION, SEA RAY BOATS, and BRUNSWICK BOAT GROUP<br><br>Defendants. | Case No. 2:21-CV-04136-BCW |

## ORDER

Before the Court is Defendants' <u>Daubert</u> Motion to strike Plaintiffs' experts (Doc. #239) and Plaintiff Dodd's motion to exclude testimony from Thomas Marhevko (Doc. #240). The Court, being duly advised of the premises, grants in part and denies in part said motions.

### BACKGROUND

Plaintiffs Karen Carroll, Honor Carroll, and Trace Carroll, as the surviving heirs and administratrix of the estate of Shawn E. Carroll, deceased, and Lauren Wilken (collectively "Carroll Plaintiffs"), and Plaintiff-intervenor Benjamin Dodd ("Plaintiff Dodd") filed a lawsuit

1

alleging product liability claims related to a boat explosion that occurred on May 2, 2020. (Docs. #35 and #163). The boat that exploded was a 1999 Sea Ray 340 Sundancer (the "Vessel")[1].

Plaintiff Dodd designated Catherine Chollett, a business and tax attorney, to provide expert testimony at trial regarding Plaintiff Dodd's economic losses due to the injuries received during the explosion. (Doc. #239-1). Carroll Plaintiffs designated Richard Hepburn, a licensed engineer, to testify as an expert about the designs and standards that apply to the Vessel's fuel fill system. (Doc. #239-5). Carroll Plaintiffs also designated J. Michael Hunter, a marine surveyor, to testify about the possible sources of fuel leaks and contributing sources of ignition that caused or contributed to the explosion. (Doc. #239-7). He also plans to testify about the process of fueling watercrafts and if any factors or failures during the fueling process influenced or contributed to the explosion.

Defendants filed their motion to strike Chollet, Hepburn, and Hunter for the following reasons: (1) Chollet's opinion that Mr. Dodd has sustained a $1,880,861.03 of diminished/lost earnings fails to consider that Mr. Dodd is currently employed and working, and no expert opines that Mr. Dodd is totally and vocationally disabled; (2) Hepburn is not qualified to provide opinions about the design and standard of recreational boats because he has no qualifications or expertise regarding recreational boat design; and (3) Hunter's opinion that a bend in the starboard fuel fill hose caused fuel to leak into the engine compartment is untested and no studies or other generally accepted authoritative literature prescribe a minimum bend radius. (Doc. #239).

---

[1] Throughout this Order, there are mentions of other Sea Ray 340 Sundancers that were inspected by experts, which the Court will refer to as "model boats". References to "the Vessel" refer to the Sea Ray 340 Sundancer that exploded in this case.

Defendants designated multiple people as retained experts including Thomas Marhevko.[2] (Doc. #252-1). Marhevko is a marine standards expert who plans to testify about the model boat's compliance to appropriate regulations, standards, and procedures. (Doc. #252-2). Plaintiff Dodd filed his motion arguing that Marhevko has no opinions about the Vessel nor has any first-hand knowledge about the Vessel and therefore cannot reliably apply any methods to this case. (Doc. #240).

## LEGAL STANDARD

Fed. R. Civ. P. 702 governs the admissibility of expert testimony. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999). The party offering a witness under Rule 702 bears the burden to establish: (a) the expert's specialized knowledge will assist the jury; (b) the expert's testimony is based on sufficient facts and data; (c) the expert's testimony is based on reliable principles and methods; and "(d) the expert has reliably applied the [acceptable] principles and methods to the facts of the case." Fed. R. Civ. P. 702(a)-(d); Lauzon v. Senco Prods. Co., Inc., 270 F.3d 681, 686 (8th Cir. 2001). The reliability and relevance of an expert's testimony is established by "the specific relationship between an expert's method, the proffered conclusions, and the particular factual circumstances of the dispute . . ." Gianfrisco v. Excelsior Youth Ctrs., Inc., Civil Action No. 10-cv-00991-PAB-KMT, 2012 WL 2890916, *1 (D. Colo. July 16, 2012).

Additionally, Rule 702 "favors admissibility if the testimony will assist the trier of fact. Doubt regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." Brauer Supply Co. 542(g) Asbestos Pers. Injury Trust v. Atl. Int'l Ins. Co., No. 4:09-CV-1640-JAR, 2012 WL 33088, *1 (E.D. Mo. Jan. 6, 2012) (citing Clark ex rel. Clark v. Heidrick, 150 F.3d 912, 915 (8th Cir. 1998)). In the context of a motion to strike, an expert's

---

[2] Carroll Plaintiffs filed separate motions to strike the rest of Defendants' retained experts. The Court only considers Plaintiff Dodd's motion to strike Thomas Marhevko and will consider the other motions in a separate Order.

opinion should not be excluded unless it "is so fundamentally unsupported that it can offer no assistance to the jury." Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minn., 356 F.3d 850, 858 (8th Cir. 2004).

Finally, district courts have discretion to determine whether expert witness testimony should be admitted. Kumho, 526 U.S. at 152. This same discretion applies to the Court's determination relative to reliability. Id.

## ANALYSIS

To the extent the expert witnesses seek to speculate regarding matters for which they lack the qualification or a factual basis to comment, both parties' motions to strike are granted. The Court will evaluate the admissibility of said expert witnesses' opinion testimony as presented at trial. Regardless, to the extent the parties seek to strike the expert witnesses' testimony in its entirety, each motion is denied. Therefore, the Court now considers whether to exclude specific portions of each expert witness's proposed testimony.

### A. Catherine Chollet may testify how much Plaintiff Dodd would have earned if his business did not close but cannot opine to the reasoning the business closed.

Chollet plans to testify that she estimates Plaintiff Dodd's present economic loss due to the explosion at $1,880,861.03. (Doc. #239-1). She asserts that in 2019 and 2020, Plaintiff Dodd's main source of income was his company, Freedom Credit Solutions, LLC ("Freedom Credit") of which he was the sole owner. Plaintiff Dodd's earnings significantly decreased after the explosion and by the end of 2021, he closed Freedom Credit. In Chollet's estimation of lost earnings, she calculates the lost earnings from Freedom Credit in 2020 and 2021 compared to the earnings in 2019. Chollet then estimates an additional twenty years of employment under the presumption Plaintiff Dodd will, as he estimates, keep working until he is 70 years old. Estimated lost earnings are discounted to present value using the nominal 15-year U.S. Treasury yield at the quoted rate

4

3.125 percent. Also, an income growth rate of 6 percent was calculated into the estimation. Chollet asserts that the cumulative loss of $1,880,861.03 is the earnings Plaintiff Dodd would have made if he did not have to close Freedom Credit and kept running it until the year 2041. Defendants argue that Chollet's opinion is unsupported by the record and can offer no assistance to a jury. (Doc. #239).

To determine whether expert testimony should be admitted at trial, the Court applies a three-part test. Lauzon, 270 F.3d at 686 (8th Cir. 2001).

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

Id.

With respect to relevance, expert testimony is relevant and helpful if it provides information beyond general knowledge. United States v. Shedlock, 62 F.3d 214, 219 (8th Cir. 1995). In the context of relevance, courts should look to the principles and methodologies applied, as opposed to "the conclusions that they generate." Kuhn v. Wyeth, Inc., 686 F.3d 618, 625 (8th Cir. 2012) (citing Daubert, 509 U.S. at 595)). However, "[a]s a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." Bonner v. ISP Techs., Inc., 259 F.3d 924, 929 (8th Cir. 2001).

The Court first considers whether Chollet has certain specialized knowledge that would be useful to the jury. Chollet has reviewed Plaintiff Dodd's individual income tax returns including financial statements for Freedom Credit from 2019 to 2021. (Doc. # 239-1). Chollet is also a

5

licensed attorney in good standing with bar in the United States Tax Court and in multiple states. Chollet formed her opinions based on her own review of Plaintiff Dodd's past earnings.

For these reasons, combined with Chollet's experience with providing business advisory services to her clients, including accounting and bookkeeping, Chollet demonstrates specialized knowledge that will assist the finder of fact at trial. Lauzon, 270 F.3d at 686 (8th Cir. 2001).

An expert's qualifications may be conferred through "knowledge, skill, expertise, training, or education." Fed. R. Evid. 702. Notably, "[g]aps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." Robinson v. GEICO Gen. Ins. Co., 447 F.3d 1096, 1100 (8th Cir. 2006).

With respect to Chollet's qualifications to provide expert testimony, as stated above, she is a licensed attorney in good standing with bar in Missouri since 2010, the United States Tax Court since 2011, and Arkansas since 2020. She has specialized in taxation and has experience in reviewing and preparing financials as she acts as the Chief Financial Officer at her law firm, the Kohn Partnership, LLP. (Doc. # 239-1 at 6).

The Court finds that Chollet's experience as a tax attorney and Chief Financial Officer, paired with her personal review of Plaintiff Dodd's tax returns, qualify her to opine regarding Plaintiff Dodd's estimated future earnings. However, the record does not reflect that Chollet reviewed Plaintiff Dodd's medical records or any document that would indicate to her that Plaintiff Dodd was injured after the explosion and couldn't work because of it. In her report, Chollet only states she relied and reviewed Plaintiff Dodd's tax returns and his business financial statements to prepare her analysis. (Doc. #239-1). The Court finds Chollet is not qualified to indicate that the reason for Freedom Credit's loss of earnings and eventual closure is because of the explosion or Plaintiff Dodd's injury.

Finally, the Court considers the reliability of Chollet's proposed testimony. Defendants argue that Chollet's testimony is not reliable because it is unsupported by the record. Defendants state there are no facts that indicate Plaintiff Dodd was vocationally disabled or his condition resulted in the closing of Freedom Credit. (Doc. #239). Furthermore, Defendants argue Chollet's projected economic loss is based on the presumption that Plaintiff Dodd will never be able to work or restart his business in the future because of his injuries. Plaintiff Dodd asserts that the record reflects after the explosion, Plaintiff Dodd suffered ankle injuries in both his feet. (Doc. #247-2 at 40). Plaintiff Dodd further states that after the injury he couldn't perform his duties for his clients due to his injuries. (Doc. #247-2 at 8).

For expert testimony to be reliable, the proponent of the expert testimony must establish, by a preponderance of the evidence the expert's underlying methodology is valid. Barrett v. Rhodia, Inc., 606 F.3d 975, 980 (8th Cir. 2010). In considering reliability, the following factors may be relevant:

> (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operations; and (4) whether the theory or technique is generally accepted in the scientific community.

O'Neal v. Remington Arms Co., L.L.C., 4:11-CV-04182-KES, 2016 WL 1465351, at *2 (D.S.D. Apr. 14, 2016) (citing Russell v. Whirlpool Corp., 702 F.3d 450, 456 (8th Cir. 2012). Additionally, the Court might consider "whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." Polski v. Quigley Corp., 538 F.3d 836, 839 (8th Cir. 2008). "This evidentiary inquiry is

meant to be flexible and fact specific, and a court should use, adapt, or reject" these considerations based on applicability to the issues. Russell, 702 F.3d at 456.

To the extent Chollet will opine that the reason Freedom Credit lost earnings and then closed was because of Plaintiff Dodd's injury, the Court finds Defendants' motion to strike granted. By her own admission, Chollet did not rely on anything in the record except for Plaintiff Dodd's tax returns and business financial statements. Those tax returns and financial statements do not indicate a reasoning as to why Freedom Credit lost earnings or closed. Therefore, the Court finds Chollet's testimony connecting Plaintiff Dodd's injury and the closure of his business is not reliable.

To the extent Chollet's testimony will opine to the earnings of Freedom Credit including the estimated earnings had the business not closed, the Court denies Defendants' motion to strike. Defendants cite Mallicoat v. Archer-Daniels-Midland Co., No. 4:11CV1218 TIA, 2013 U.S. Dist. LEXIS 160971, (E.D. Mo. Nov. 12, 2013) to argue not allowing Chollet to testify on this matter. In Mallicoat, the defendants filed a Daubert motion to exclude the testimony of an economist designated to opine about plaintiff's past and future wage losses. In that case, defendants argue that the expert's future wage loss opinions and calculations were inadmissible because they rely on baseless and unsubstantiated assumptions. The district court granted defendants' motion holding that "[d]epartures from actual pre-injury earnings must be justified and cannot be unduly speculative. Like all expert testimony, an expert witness's calculations of future earning capacity are inadmissible under Federal Rule of Evidence 702 if based on 'unsupported speculation.'" Id. at 8 (quoting Andler v. Clear Channel Broad., Inc., 670 F.3d 717, 727 (6th Cir. 2012)).

Here, the facts are distinguishable from Mallicoat. In Mallicoat, the expert economist opined the plaintiff lost $507,099 in future wages by assuming the plaintiff could only earn

8

minimum wage over 17.5 years. The professor calculated minimum wage into future earnings because he was asked to assume plaintiff would earn minimum wage. Id. at 5. The court held that the opinion was unsupported speculation because there was nothing in evidence to support the minimum wage assumption. Id. at 5-6.

In this case, Chollet reviewed Plaintiff Dodd's earnings from 2019-2021. She considered that in 2019, Plaintiff Dodd earned $60,257. (Doc. #247-1). In 2020, the year the explosion occurred, Plaintiff Dodd's earnings decreased to $36,614 with an estimated loss of earnings of $23,643 compared to 2019. In 2021, Plaintiff Dodd's earnings decreased again to $35,143 with an estimated loss of earnings of $25,114 compared to 2019. As her chart shows, Chollet used the earnings of 2019, the year before Plaintiff Dodd was injured, as the base year to calculate estimated future earnings. (Doc. #247-1 at 8). Her calculations were based on Plaintiff Dodd's tax returns and the earnings he previously made and therefore are justified and not unduly speculative. Defendants' argument regarding the factual basis of Chollet's testimony goes to the credibility of the testimony, which Defendants have the responsibility to examine the factual basis in cross-examination. Bonner, 259 F.3d at 929 (8th Cir. 2001). Therefore, the Court finds that Chollet may testify to how much Plaintiff Dodd would have earned if Freedom Credit did not close but shall not opine to the reasoning the business closed.

   **B. Richard Hepburn may testify about fuel systems and his inspections but cannot opine to recreational boats in general or whether the Vessel was defectively designed.**

Richard Hepburn plans to testify about the standards that apply to the fuel fill system of a model boat, including its design. (Doc. #239-5). Defendants argue that Hepburn's testimony should be excluded because he lacks the knowledge and experience to opine about recreational boats. (Doc. #239).

The Court first considers whether Hepburn has certain specialized knowledge that would be useful to the jury. Lauzon, 270 F.3d at 686 (8th Cir. 2001). Hepburn reviewed documentary evidence relevant in this case, including the model boat design drawings and fuel fill line routing. (Doc. #239-5). In addition, Hepburn personally inspected the Vessel and three model boats of varying model years. Hepburn formed his opinions about the designs and standards based on his own review and inspection. For these reasons, combined with Hepburn's experience with marine engineering, Hepburn demonstrates specialized knowledge that will assist the trier of fact at trial.

As it pertains to his qualifications, Hepburn is a licensed engineer and the former Director of Surface Ship Design for the U.S. Navy's Naval Sea Systems Command. (Doc. #239-5). He spent 11 of his 25 years on active duty in shipyards responsible for both new construction and repair of ships. Hepburn has a Naval Engineer degree and a Master of Science degrees in Naval Architecture and Marine Engineering from Massachusetts Institute of Technology.

Hepburn's education and experience in marine engineering qualifies him to testify about fuel fill system designs. Further, Hepburn's personal inspection of the Vessel and model boats qualify him to opine on the designs of the fuel fill system in those specific boats. However, Hepburn's qualification does not extend to the standards of recreational boats in general. Hepburn's knowledge and experience pertains to ships and military-based watercrafts, which follow different regulations and standards than recreational boats like the Vessel. (Doc. #258-1). Hepburn has not designed or engineered a recreational boat in his over 25-year career in marine engineering (Doc. #239-6). Since Hepburn personally inspected the Vessel and the model boats, he may opine to his observations and his concerns with the fuel fill system designs he inspected as compared to his specialized knowledge of other fuel fill system designs. However, his opinion must be limited to those specific recreational boats as he is not qualified to opine about recreational

10

boats in general. Furthermore, Hepburn is not qualified to opine that the Vessel is defectively designed because he has no knowledge, training, or experience to make such opinions about recreational boats. Notwithstanding, Hepburn may testify about his inspection of the Vessel and opine regarding what deviations from general safety standards (if any) might have contributed to the explosion. Defendants' argument regarding other gaps in Hepburn's qualifications or knowledge goes to the weight of his testimony, not its admissibility. Robinson, 447 F.3d at 1100 (8th Cir. 2006).

Finally, the Court finds Hepburn's proposed testimony, as limited by this Order, to be reliable. Hepburn personally inspected the Vessel and three model boats. Hepburn formed his opinions about the designs and standards based on his own review and inspections. While Hepburn does not have practical experience in recreational boats, he does have over twenty-five years of experience in marine engineering. The Court finds these factors sufficient to testify as an expert. Therefore, the Court finds that Hepburn may testify about fuel systems in the Vessel and the model boats in his inspections but shall not opine on recreational boats in general or whether the Vessel was defectively designed.

### C. Thomas Marhevko may testify as an expert but cannot testify to whether the Vessel complied with regulations and standards nor whether the model boat's certification inspection was "verified" or "resolved".

Thomas Marhevko is a Naval Architect and a Marine Engineer designated by Defendants to testify as an expert to the following: (1) The model boats received a correct and verified certification inspection; (2) The model boats resolved the variances received in the certification inspection; (3) The installation of the fuel fill line was not in violation of the applicable American Boat and Yacht Council ("ABYC") standard and C.F.R. regulations; and (4) Defendants and ABYC both correctly require checks and inspections of the fuel system and both are adequately

11

defined in applicable literature. (Doc. #252-2). Plaintiff Dodd argues Marhevko's opinions will not help the jury determine the facts at issue because Marhevko does not apply any principles or methods to the facts of the case. (Doc. #240).

The Court first considers whether Marhevko has certain specialized knowledge that would be useful to the jury. Lauzon, 270 F.3d at 686 (8th Cir. 2001). Plaintiff Dodd asserts that Marhevko's opinions are not useful to the jury because he has no opinions about the Vessel nor has any first-hand knowledge about the Vessel. (Doc. #240). Plaintiff Dodd asserts Marhevko admits his opinions are about the model boats but not about the Vessel. Plaintiff Dodd argues Marhevko never examined or evaluated the Vessel and Marhevko admits that he doesn't plan to offer any opinion on the Vessel at trial. (Docs. #240, 240-1 at 15). Defendants contend Marhevko's opinions go directly to the essence of Plaintiff Dodd's claims since the Vessel is similar to the model boats. (Doc. #252).

Marhevko reviewed documentary evidence relevant in this case, including build documents of model boats, other expert witnesses' reports and depositions, and the regulations and standards that would apply to recreational boats. (Doc. #252-2). Marhevko formed his opinions based on his own review. For these reasons, combined with Marhevko's experience with recreational boat standards and marine engineering, Marhevko demonstrates specialized knowledge that will assist the trier of fact at trial regarding regulations and standards of the model boats. However, to the extent that Marhevko plans to opine on whether the Vessel complied with regulations and standards, Plaintiff Dodd's motion to exclude testimony is granted. In his deposition, Marhevko admits that he has not reviewed the Vessel except in the pictures he has seen while preparing his report. (Docs. #240-1 at 19). He also admits he personally doesn't know whether the Vessel complied with the standards because from the photos he saw, he couldn't make

any conclusions. Therefore, the Court finds Marhevko does not have specialized knowledge to opine whether the Vessel was compliant with regulations and standards.

The Court now considers whether Marhevko is qualified to assist the jury as an expert. Id. Marhevko worked over twenty years in standards development for recreational boats with the ABYC and the National Marine Manufacturers Association ("NMMA"). He has a Master of Science degree in Naval Architecture & Marine Engineering. The Court finds that Marhevko's education and experience in recreational boat standards, qualifies him to testify about the standards compliance of the model boats.

As it pertains to the reliability of Marhevko's proposed testimony, Plaintiff Dodd argues Marhevko's opinions and reasoning cannot be applied to the facts at issue because Marhevko does not have any knowledge about the Vessel and only secondhand knowledge about the model boat that was inspected by the NMMA. (Doc. #240). Two of the opinions Marhevko plans to testify on are about a NMMA Certification Inspection that occurred on a model boat in 1998. In this inspection, two variations were found on the model boat: (1) "Fuel fill deck plate not accessible for insp[ection]/maintenance" and (2) "Sag in fuel fill hose creates a fuel trap." (Doc. #255-6). Marhevko plans to testify that the model boats received a correct and verified certification inspection and the variances were resolved. (Doc. #252-2).

When preparing his report, Marhevko reviewed the Certification Program Inspection Report ("inspection report") and use the inspection report to conclude the model boat received correct and verified certification inspection. Marhevko oversaw the NMMA certification program in 1997 but was not involved in nor has any knowledge about the inspection of the model boat in 1998. (Doc. #240-1). With Marhevko's twenty years of experience with the NMMA certification program, the Court finds Marhevko's opinion regarding the certification inspection procedure to

13

be reliable, however, to the extent Marhevko plans to testify that the model boat received a "correct and verified" certification inspection, Plaintiff Dodd's motion to exclude testimony is granted. While Marhevko may know the proper procedure for a boat to be certified once variances are found in the inspection, Marhevko has no knowledge, nor seen no documentation that indicates such procedure was followed for this model boat. (Doc. #240-1 at 18). This applies to Marhevko's second opinion as well. Marhevko plans to testify the model boat resolved the variances found in the inspection report, but he has no actual knowledge to rely on, or evidence to analyze to base this opinion on. In his deposition, Marhevko states that because he knew the person who signed the inspection report and the reputation of the boat manufacturer Sea Ray, he concluded that the model boat must have corrected the variances. (Doc. #240-1 at 16-18). The Court finds this reasoning unreliable. Marhevko may testify to the common practices of getting a recreational boat certified after a variance is found or as to what a verified certification inspection entail. However, The Court finds Marhevko shall not testify that the model boat's certification inspection was corrected, verified, or resolved.

The other opinions Marhevko plans to testify to relate to standards and regulations applicable to recreational boats and boat manufacturers. Marhevko formed his opinions about compliances and violations of applicable standards based on his own review of the relevant materials in this case. Marhevko has over twenty years of experience in developing marine standards. The Court finds these factors sufficient to testify as an expert on these matters. Therefore, the Court finds that Marhevko: (1) May testify that the model boat received a certification inspection but cannot opine to whether it was "corrected" or "verified"; (2) Shall not testify that the model boat resolved the variances found in the certification inspection; (3) May testify that the installation of the fuel fill hose was not in violation of the ABYC standards and

14

C.F.R. regulations; and (4) May testify that Defendants and ABYC both correctly required checks and inspections of the fuel system and both are adequately defined in applicable literature.

### D. Michael Hunter may testify as an expert.

J. Michael Hunter is a marine surveyor designated by Carroll Plaintiffs to testify about possible sources of fuel leaks and contributing sources of ignition that caused or contributed to the explosion. (Doc. #239-7). Defendants argue that Hunter's testimony that a bend in the fuel fill hose caused the hose to weaken over time which ultimately led to the explosion, should be excluded because it is unsupported and untested. (Doc. #239).

Defendants do not question Hunter's specialized knowledge, which is evident in the record as Hunter has reviewed documentary evidence relevant in this case, including incident reports, depositions, and previous model boat inspections. (Doc. #239-7). Hunter has also personally inspected model boats like the Vessel. Notwithstanding, the Court finds Hunter to have specialized knowledge that will assist the trier of fact at trial.

Furthermore, Defendants do not question Hunter's qualifications to give expert testimony. Hunter has been a marine surveyor since 2001. He has certifications from the ABYC for Marine Systems, Marine Corrosion, Composite Boat Building, and other areas. (Doc. #239-7 at 61). Hunter has also reviewed extensively the relevant materials of this case. Notwithstanding, the Court finds Hunter is qualified to provide expert testimony.

Defendants solely contends that one of Hunter's opinions will be unreliable to the jury, specifically, Hunter's opinion that the bend in the Vessel's fuel fill hose induced tension and cracking in the hose and lead to the fuel leak. (Doc. #239-8). Defendants argue this opinion is unsupported since Hunter did not test this opinion during his inspections, nor measure the bend radius of any model boats' fuel fill hoses. Defendants also assert that since Hunter did not test his

opinion, it is impossible to know the rate of error for his opinion. The final factor Defendants argue is that Hunter's opinion has not been peer-reviewed nor has it been published.

As stated above when considering reliability, the following factors may be relevant: (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operations; and (4) whether the theory or technique is generally accepted in the scientific community. Russell, 702 F.3d at 456 (8th Cir. 2012). However, the Court may also consider "whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." Polski, 538 F.3d at 839 (8th Cir. 2008). However, these factors are not required and the Court has the discretion to "use, adapt, or reject these considerations based on applicability to the issues". Russell, 702 F.3d at 456. See also Kumho, 526 U.S. at 152.

Here, the record reflects that Hunter reviewed documentary evidence relevant in this case, including incident reports, depositions, and previous model boat inspections. (Doc. #239-7). Hunter also made visual inspections of the fuel fill hoses the model boats he inspected. Hunter relied on his inspections, his analysis of the record, and his experience as a marine surveyor to make his opinions. Hunter sufficiently connected his proposed testimony with the facts of this case. Hunter opines that the radius bend of the fuel fill hose created undue friction with the steel wire reinforcements creating too much stress on the hose and subjecting it to cracking. The cracking in the fuel fill hose would connect to the fuel leakage and the subsequent explosion at ignition. Defendants' concerns with Hunter's opinion goes to the weight of his testimony. Therefore, the Court finds that Hunter may testify as an expert regarding his findings in his report. Accordingly, it is hereby

ORDERED Defendants' Daubert Motion to strike Plaintiffs' experts (Doc. #239) is GRANTED IN PART and DENIED IN PART. It is further

ORDERED Plaintiff Dodd's motion to exclude testimony from Thomas Marhevko (Doc. #240).  is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

Date: <u>September 25, 2023</u>            <u>/s Brian C. Wimes            </u>
                                           JUDGE BRIAN C. WIMES
                                           UNITED STATES DISTRICT COURT